# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ALEXANDRIA GODDARD, | : | **CIVIL ACTION NO. 2:19cv1506** |
| 6674 Birchton St. | : | |
| Dublin, OH 43017, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ALLEGIANCE ADMINISTRATORS, LLC, | : | |
| 5500 Frantz Rd. | : | |
| Dublin, OH 43017 | : | JUDGE: |
| | : | |
| and | : | MAGISTRATE JUDGE: |
| | : | |
| NATIONAL ADMINISTRATIVE SERVICE CO., | : | |
| 5500 Frantz Rd. | : | |
| Dublin, OH 43017 | : | |
| | : | |
| and | : | |
| | : | |
| DIMENSION SERVICES CORP., | : | |
| 5500 Frantz Rd. | : | |
| Dublin, OH 43017 | : | |
| | : | |
| Defendants. | : | **JURY DEMAND ENDORSED HEREON** |

## COMPLAINT

**I.  Preliminary Statement**

1. This action seeks back pay and fringe benefits; front pay and reinstatement; liquidated damages; declaratory, injunctive and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for (a) failure to restore Plaintiff to her former position with the same or substantially similar duties and responsibilities following her use of Family Medical Leave Act ("FMLA") leave; and (b)  retaliatory termination of Plaintiff for exercising

1

her rights under the FMLA; or, alternatively, (c) interference and/or retaliatory termination in violation of the FMLA by operation of the doctrine of equitable estoppel if Defendants were not actually covered FMLA employers because Plaintiff reasonably relied to her detriment upon their representations of the material facts that they were covered FMLA employers and she was eligible for FMLA; based on those representations she took pre-approved FMLA leave; and, while she was out on pre-approved leave and incapacitated, they retroactively converted her leave to an unprotected personal leave and then terminated her for failure to return to work while she was still hospitalized.

## II.     Jurisdiction and Venue

2. This action brings an FMLA claim pursuant to 29 U.S.C. §§ 2612(a) and 2615(a)(1); (2).

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question) and the FMLA, 29 U.S.C. § 2615(a).

4. Declaratory, injunctive, and equitable relief; back pay, front pay or reinstatement; and liquidated damages are sought pursuant to 28 U.S.C. §§ 2201, 2202, and the FMLA, 29 U.S.C. § 2617(a).

5. Costs and attorney fees may be awarded pursuant to the FMLA, 29 U.S.C. § 2617(a)(3), and Fed. R. Civ. P. 54.

6. Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) because Defendants employed Plaintiff at 5500 Frantz Road, 43017 in Dublin, Ohio, which is within Franklin County, Ohio, in the Southern District of Ohio.

## III.     Parties

7. Plaintiff Alexandria Goddard ("Ms. Goddard" or "Plaintiff"), a resident of the State of Ohio, was employed by Defendants as a full-time Agent Dealer Services Representative from July 5, 2016, until Defendants terminated her on March 15, 2018; was compensated at the rate of $16.34 per hour, or approximately $33,987.00 annually at the time of termination, plus fringe benefits, including health, dental, and vision insurance, and short-term and long-term disability insurance; performed at least 1,250 hours of service for Defendant in the 12 months prior to taking FMLA leave; and, at all times material to this Complaint, apart from her time away from work on FMLA-protected leave, competently performed all of her job duties.

8. Defendants Allegiance Administrators, LLC ("Allegiance"), National Administrative Service Company ("National"), and Dimension Service Corporation ("Dimension") are integrated as a single employer for the purposes of FMLA coverage under FMLA 29 C.F.R. § 825.104(c)(2), and/or constitute a joint-employer for purposes of FMLA coverage under 29 C.F.R. § 825.106(a), collectively known as Allegiance Administrators, LLC ("Allegiance") because it appears Defendants had common management, their operations were interrelated, they used centralized control of labor relations, and they shared common ownership or financial control, or, alternatively, each exercised some control over the working conditions of other employees by sharing employees' services, acting directly or indirectly in the interest of one or more other Defendants relative to employees, and sharing control, directly or indirectly, of employees in light of their control by one or more other Defendants.

9. Defendant Allegiance is an Ohio limited liability company incorporated in the State of Ohio, having its principal place of business in Dublin, Ohio located in Franklin County, which is within the Southern District of Ohio; Allegiance comprises with the other Defendants a single integrated and/or joint-employer under the FMLA; and, upon Plaintiff's information and

3

reasonable belief, Allegiance employs more than 50 employees within a 75-mile radius of the location where Plaintiff performed her job duties making it a covered FMLA employer.

**IV. <u>Facts</u>**

10. Ms. Goddard began her employment with Dimension on July 5, 2016 as a full-time Agent Dealer Services Representative, earning $16.34 per hour, or approximately $33,987.00 annually.

11. Ms. Goddard's job duties included, but were not limited to, providing customer service to the Defendant Companies' agent and dealer base by providing service information, resolving product or service problems, setting up agent/dealer accounts on the company software platform, and trouble shooting problems with software issues.

12. On February 8, 2018, Ms. Goddard sent an email to Dimension HR Representative Michelle DeFouw inquiring about her eligibility for the FMLA and advising that she may need to schedule time off from work to seek medical treatment for health problems that she was experiencing.

13. On February 15, 2018, Dimension Executive Administrative Assistant Sally Mason responded to Ms. Goddard's inquiry regarding FMLA eligibility advising that she was eligible for FMLA leave, Dimension was a covered employer, and that she needed to complete and return the Certificate of Health Care Provider form which was attached to the email.

14. Also attached to Ms. Mason's email was the U.S. Department of Labor's Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act) form with the name Alexandria Goddard shown in the space for employee in the "Part A – Notice of Eligibility" portion of the form.

15. The U.S. Department of Labor's Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act) form also contained a space for an employer to check whether or not an employee is eligible for FMLA and a check mark was placed in the space indicating "… eligible for FMLA leave (See Part B below for Rights and Responsibilities)".

16. Reasonably relying on Dimension's written representation that she was eligible for protected FMLA leave and that Dimension was a covered employer under FMLA, as well as FMLA postings in the workplace indicating that Dimension was covered under the FMLA, Ms. Goddard scheduled medical treatment which required in-patient and out-patient hospitalization for medical care.

17. Ms. Goddard was admitted to Columbus Springs Hospital's partial hospitalization program on February 26, 2018, for a serious medical condition qualifying as an FMLA illness.

18. On February 26, 2018, Ms. Goddard sent a text message to Dimension Manager Nicole Blackburn advising that she was hospitalized and "I will have doc submit paperwork to HR."

19. Ms. Goddard subsequently gave the Certificate of Health Care Provider form and related FMLA paperwork to her treating medical professionals to complete and return to Dimension, as requested by Dimension.

20. On March 9, 2018 at some time before 9:12 A.M., while Ms. Goddard was still hospitalized, Dimension forwarded a letter to her by email (and U.S. Mail) confirming that she was previously notified of her eligibility for FMLA leave on February 15, 2018.

21. The letter further advised Ms. Goddard that, because the requested FMLA paperwork had not been received to support her leave and she had not informed her supervisor or

manager of the expected duration of her absence, Dimension concluded she had "voluntarily terminated" her position with the company.

22. The correspondence advised Ms. Goddard to contact her supervisor immediately, "[I]f there are any extenuating circumstances that we should consider."

23. Ms. Goddard did not know that the hospital failed to submit FMLA Certification to Defendant Dimension and at 9:12 A.M on March 9, 2018, the same day she received the letter, Ms. Goddard responded with an email to Defendant Dimension employees Michelle DeFouw, Sally Mason, and Nicole Blackburn, which reads in part " [T]his is inaccurate. I have not voluntarily terminated my employment and apologize that the FMLA documents have not been received through no fault of my own. . . [I] am under medical care through April 13."

24. On the morning of March 9, 2018, the same day that Ms. Goddard received the letter from Dimension, she also responded by sending a text to Dimension employee Nicole Blackburn, which reads in part, "I have been partially hospitalization (sic) for the past two weeks and had submitted FMLA documents but they had not been completed by the hospital. They are working on those now and my duration of medical leave is April 13."

25. After sending an email and text message to Dimension employees, Ms. Goddard immediately located the employee responsible for processing medical records at the Columbus Springs Hospital and, as requested, at 10:53 a.m. on March 9, 2018, the completed FMLA Medical Certification form was faxed to Dimension indicating that Ms. Goddard would be under medical care until April 13, 2018.

26. A fax Certification Report indicates that on March 9, 2018 at 10:58 A.M., Dimension received the completed FMLA Medical Certification form indicating that Ms. Goddard would be under medical care until April 13, 2018.

27. On March 9, 2018 at 3:36 p.m., HR Representative DeFouw further confirmed receipt in an email to Ms. Goddard that reads in part, "[I] am confirming receipt of the fax from your doctor's office on March 9, 2018."

28. Ms. DeFouw did not process the FMLA Certification form requested by Dimension instead advising Ms. Goddard, "[P]lease note, this work site no longer has 50 employees within a 75-mile radius. Accordingly, this leave will not be designated under the Family Medical Leave Act. I've revised the attached notice to reflect the reason for lack of eligibility…The company is granting you three weeks of unpaid personal leave beginning on February 21, 2018. This leave will expire on March 15, 2018."

29. Defendant Dimension retroactively converted Ms. Goddard's previously approved and protected FMLA leave to an unprotected personal leave and informed Ms. Goddard that the personal leave would expire on March 15, 2018, even though the FMLA Medical Certification faxed to and received by Dimension indicated that she would not be medically cleared to return to work until April 13, 2018.

30. Because the personal leave was processed retroactively on March 9, 2018, with a return date of March 15, 2018, in effect, Dimension allowed only five days for Ms. Goddard to return to work, despite knowing that she was hospitalized and unable to return until April 13, 2018.

31. Ms. Defouw sent Ms. Goddard a U.S. Department of Labor's Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act) form (the same form which had previously been sent to Ms. Goddard on February 15, 2018 indicating that she was eligible for FMLA), but it was now revised to show she was ineligible because Dimension was no longer a covered FMLA employer.

7

32. The form was changed to indicate that Ms. Goddard was now *not eligible* for FMLA, with a check mark in the box that reads "[A]re not eligible for FMLA leave because[e]" and with a check mark placed in the box beside the reason, "[Y]ou do not work and/or report to a site with 50 or more employees within 75-miles."

33. The form correctly noted that Ms. Goddard informed Dimension of the need to take leave on February 8, 2018, but erroneously indicated she was requesting that the leave begin on June 5, 2017.

34. Earlier the same day on March 9, 2018, Defendant represented to Ms. Goddard that it was a covered FMLA employer and she was eligible for FMLA leave in correspondence sent to her which reads in part, "On February 15, 2018 we notified you of your eligibility for FMLA leave. You were required to remit the appropriate leave certification paperwork on March 2, 2018 to support your request for FMLA leave. As of March 8, 2018, we had not received any paperwork to support your leave."

35. Dimension also represented that it was a covered FMLA employer with the requisite number of employees, and that Ms. Goddard was eligible for FMLA leave, in all interactions and communications it had with her prior to the email that HR Representative DeFouw sent to her at 3:36 P.M. on March 9, 2018.

36. Any reasonable person would have relied on the representations of material facts made by Dimension's Management and Human Resources Representative that it was a covered FMLA employer and that Ms. Goddard was eligible for protected FMLA leave.

37. Dimension's Management and Human Resources Representative reasonably should have known that Ms. Goddard would rely on its representations regarding her eligibility

8

for protected FMLA leave based upon her inquiry regarding FMLA eligibility, its subsequent approval of her leave, FMLA postings in the workplace, and communications with Ms. Goddard.

38. Ms. Goddard did reasonably rely on Dimension's FMLA representations of material facts when she scheduled the time and manner of her medical treatment, took an FMLA leave based on Dimension's representations, and was terminated as a result.

39. Ms. Goddard was fully admitted to the hospital on March 12, 2018 and did not have access to mail, email, or text messaging per the instructions of her medical providers, and she remained there until she was discharged on March 22, 2018.

40. A hospital employee, Sara Elliot, left two voicemails for Ms. DeFouw advising Defendant Dimension that Ms. Goddard had been admitted to the hospital and would not be able to report for work on March 15, 2018.

41. Defendant did not return Ms. Elliot's phone calls or contact Ms. Goddard regarding the status of her hospitalization or ability to return to work.

42. On March 15, 2018, Dimension sent a letter via Federal Express ("Fed-Ex") to Ms. Goddard's home address advising that she was terminated because she "did not report to work today. Therefore, we have concluded that you have voluntarily terminated your job."

43. Defendant knew that Ms. Goddard had not "voluntarily terminated" her job, because on March 9, 2018 they confirmed receipt of the FMLA Medical Certification indicating that Ms. Godard would be under medical care until April 13, 2018 and a hospital employee left two voicemails for Ms. DeFouw advising Defendant that Ms. Goddard had been admitted to the hospital and would not be able to report for work on March 15, 2018.

44. Ms. Goddard was still hospitalized at the time of her termination and therefore was not at home to sign for the Fed-Ex termination letter delivery, which was returned to Defendant Dimension as undeliverable.

45. Defendant Dimension did not contact Ms. Goddard via telephone, email, or text regarding her termination, although those methods of communication were successfully used on previous occasions.

46. Defendant Dimension terminated Ms. Goddard despite being previously informed she was hospitalized, would remain under medical care until April 13, 2018, and knowing that she took FMLA leave in reliance on Dimension's initial representation and approval of it.

47. Ms. Goddard was discharged from the hospital on March 22, 2018.

48. Ms. Goddard discovered she was terminated when she attempted to fill her prescriptions the next day at a pharmacy and was advised that her medical insurance had been cancelled due to termination of employment.

49. On March 30, 2018, Ms. DeFouw emailed Ms. Goddard advising that a termination letter, attached to the email, was mailed to her home and was returned to Defendant Dimension by Fed-Ex.

50. Defendant Dimension deducted insurance premiums from Ms. Goddard's paycheck to pay for medical coverage, which she did not receive.

51. On April 15, 2018, Ms. Goddard applied for unemployment benefits with the Ohio Department of Job and Family Services ("ODJFS").

52. Dimension erroneously reported to ODJFS that Ms. Goddard was terminated on February 6, 2016 for being "absent or tardy," even though at that time Ms. Goddard was still employed with Defendant, did not request information regarding eligibility for FMLA leave until

10

February 8, 2018, and on February 15, 2018 Dimension represented it was a covered FMLA employer and she was eligible for leave.

53. In addition to the erroneous termination date provided to ODJFS, the termination reason of being "absent or tardy" differed from the reason Defendant previously provided to Ms. Goddard in its March 15, 2018 termination letter to her.

54. Ms. Goddard received no counseling, warnings, or disciplinary action regarding tardiness or attendance problems, or any performance problem for that matter.

55. On May 3, 2018 the ODJFS determined that Dimension terminated Ms. Goddard "without just cause" and that she was eligible for unemployment benefits.

56. Dimension appealed the ODJFS determination of eligibility, then asserting that the reason for termination was Defendants' insurance company advising that it did not have the requisite number of employees for FMLA coverage, so it offered Ms. Goddard three additional weeks to return to work, omitting the fact that by that time she was already hospitalized on the FMLA leave previously approved by Defendants, and not medically released to return to work April 13, 2018.

57. On May 9, 2018, the ODJFS vacated its earlier determination of unemployment benefits eligibility, and on June 4, 2018, issued a Redetermination finding Dimension terminated Ms. Goddard "with just cause."

58. On June 25, 2018, Ms. Goddard appealed the ODJFS determination of ineligibility, and a two-part Unemployment Appeals Hearing was conducted on July 9, 2018 and July 25, 2018.

59. At the hearing, Ms. DeFouw testified that Dimension no longer had 50 employees within a 75-mile radius and therefore, was no longer subject to FMLA requirements.

60. Ms. DeFouw was unable to confirm when Defendant Dimension determined it was no longer a covered FMLA employer, indicating it relied on information from its insurer, and that FMLA coverage may have ceased during the summer of 2017, or perhaps during the fall of 2017.

61. An employer's coverage under the FMLA does not immediately cease at the time the number of employees falls below the minimum number required as inferred by Ms. DeFouw.

62. Under § 825.105(e) of the FMLA, "[A] private employer is covered if it maintained 50 or more employees on the payroll during 20 or more calendar workweeks (not necessarily consecutive workweeks) in either the current or the preceding calendar year."

63. Ms. DeFouw stated that although she informed Ms. Goddard that she was eligible for FMLA leave, at that time Defendant Dimension was "not eligible," explaining she "did not do an employee count at that time," and that she did not learn of the ineligibility until the insurance company "pointed it out."

64. When Hearing Officer Brian Forbes asked Ms. DeFouw when she was made aware that Defendants no longer had the minimum number of employees to be covered by the FMLA, she indicated early March; yet the March 9, 2018 letter sent to Ms. Goddard advising that she had not returned the required FMLA paperwork "to support your FMLA leave" represents that Defendant was a covered employer at that time.

65. During the hearing, Ms. DeFouw provided contradictory testimony indicating Defendant was no longer covered and "lost our standing in 2017."

66. Ms. DeFouw did not provide testimony indicating what had changed between the morning of March 9, 2018, when Defendant represented itself as a covered FMLA employer in the correspondence sent to Ms. Goddard advising that she had not returned the required FMLA

paperwork, and the afternoon of the same day when Defendant advised Ms. Goddard that it no longer had 50 employees within a 75-miles radius, and was no longer a covered FMLA employer.

67. The June 4, 2018 ODJFS Director's Redetermination was reversed with a finding that Defendant terminated Ms. Goddard "without just cause" because her absences "were related and due to extenuating medical circumstances," and found Dimension's conclusion that she voluntarily abandoned her job was "not reasonable."

68. Ms. Goddard reasonably believed that Defendant Dimension was a covered employer under the FMLA based on representations it made to her upon her inquiry regarding eligibility, approval of the FMLA leave, and FMLA postings in the workplace, as any reasonable employee would have done, and scheduled medical treatment and time away from work accordingly.

69. Defendant has other indicia of having the minimum number of employees required for FMLA coverage, such as "The Dimension Service Corporation 401K Profit Sharing Plan Annual Summary Statement for 2017" which reads in part, "[A] total of 92 persons were participants in or beneficiaries of the plan at the end of the plan year."

70. Defendants should have known and did know that Ms. Goddard reasonably relied on its many representations regarding its FMLA coverage and her eligibility for protected leave, because she took an FMLA leave after inquiring about her eligibility.

71. Defendants acted willfully in reckless disregard of Ms. Goddard's FMLA rights because they lacked reasonable grounds to believe that, consistent with the FMLA, they could lawfully terminate her for absenteeism deemed excessive when all of the absences were FMLA-protected, or for failing to return to work before she had exhausted available FMLA time off.

72. Defendant Dimension's claim that it was no longer a covered employer under the FMLA was pretext for firing Ms. Goddard in retaliation for taking FMLA leave for a serious illness.

73. Despite exercising reasonable diligence, Ms. Goddard has been unable to secure a position comparable in pay, benefits, and opportunities to the one she had when employed by Defendants.

74. As a result of her unlawful termination, Ms. Goddard lost her health insurance during the time that she was hospitalized for a serious medical condition and she did not have the financial resources to enroll in COBRA.

75. As a result of her unlawful termination, Ms. Goddard suffered economic and emotional harm.

## V. Claims for Relief

### A. Interference with FMLA Rights

76. Paragraphs 1 through 75 above are realleged and incorporated herein.

77. Defendants violated the FMLA by failing to restore Ms. Goddard upon her return from FMLA leave and/or taking into negative account Ms. Goddard's use of her FMLA leave when it terminated her.

### B. Retaliation for the Exercise of FMLA Rights

78. Paragraphs 1 through 75 above are realleged and incorporated herein.

79. Defendants violated the FMLA by terminating Ms. Goddard, whether the reason for termination was for poor attendance as asserted in Defendants' response to ODJFS, or that she failed to return to work by March 15, 2018, as asserted in Defendants March 15, 2018 termination letter to Ms. Goddard.

C. **Equitable Estoppel due to Detrimental Reliance**

80. Paragraphs 1 through 75 above are realleged and incorporated herein.

81. Defendants made definite misrepresentations of material facts to Ms. Goddard by representing that they were covered under the FMLA and that she was eligible for FMLA leave, as indicated in documented communications between Defendants and Ms. Goddard, and by their approval of her leave as a protected FMLA leave.

82. Ms. Goddard reasonably relied on Defendants' material misrepresentations regarding FMLA coverage and her eligibility for leave when she scheduled the manner and time of her medical treatment, and the amount of available FMLA time that she would use to take off from work.

83. Ms. Goddard reasonably relied on Defendants' material representations of facts to her detriment when she relied upon Defendants' approval of her FMLA leave to be treated for her serious medical condition, and her position changed for the worse when Defendants terminated her based on her reasonable reliance.

84. Defendants should have reasonably known, and did know, that Ms. Goddard would and did rely upon their definite misrepresentation of material facts.

85. An employer's mistake regarding FMLA coverage still constitutes misrepresentation, and, as a result, here, Defendants should be equitably estopped from challenging Plaintiff's entitlement to FMLA leave.

VI. **Prayer for Relief**

WHEREFORE, Plaintiff prays that this Court:

a. declare that Defendants violated the FMLA, or in the alternative, equitably estop Defendants from asserting that they were not covered FMLA employers based on not having the minimum number of employees required for FMLA coverage;

b. order such injunctive and equitable relief as will make Plaintiff whole for Defendants' violation, including reinstatement with full back pay and benefits, salary raises and bonuses, pre- and post-judgment interest, and costs;

c. award liquidated damages in an amount equal to lost back pay and benefits.

d. allow a reasonable attorneys' fee; and

e. grant such other relief as the Court may deem appropriate.

Respectfully submitted,

By: */s/ Helen M. Robinson*
Helen M. Robinson (0097070)
(*hrobinson@mashallforman.com*)
John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)
Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a jury of eight (8) persons.

By: */s/ Helen M. Robinson*
Helen M. Robinson