IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ALEXANDRIA GODDARD** | : | |
| | : | **Case No. 2:19-cv-1506** |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Jolson** |
| **ALLEGIANCE ADMINISTRATORS,** | : | |
| **LLC, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on multiple motions. Defendants Allegiance Administrators, LLC ("Allegiance"), National Administrative Service Co. ("National") and Dimension Services Corp. ("Dimension" or "Company") move for Summary Judgment. (ECF No. 32). Plaintiff Alexandria Goddard filed an Opposition to Defendants' Motion for Summary Judgment ("Opposition Brief"), to which she attached several exhibits. (ECF No. 33). Defendants responded by filing a motion to strike various statements, arguments, and exhibits that she included. (ECF No. 36). Additionally, Ms. Goddard filed a Motion to File a Sur-Reply in Response to Defendants' Reply in Support of their Motion for Summary Judgment, to which she attached two additional exhibits. (ECF No. 38). Defendants opposed this motion and again moved to strike the exhibits. (ECF No. 39). For the reasons outlined below, the Court **GRANTS** Ms. Goddard's Motion to File Sur-Reply [#38]; **DENIES** Defendants' Motion to Strike [#36]; **DENIES** Defendants' Motion to Strike [#39]; and **DENIES** Defendants' Motion for Summary Judgment [#32].

1

## II. BACKGROUND

Plaintiff Alexandria Goddard was an Agent Dealer Services Representative for Dimension Services Corp. from July 2016 through early 2018. She worked at their Dublin, Ohio facility, located at 5500 Frantz Road.

Ms. Goddard reports that she has suffered from chronic back pain since 2010, following a spinal fusion surgery. (ECF No. 33, Ex. A Declaration). Toward the end of 2017, her back pain worsened, and she was "treated with pain medication to the extent that it became problematic for her." (ECF No. 33 at 3). She reports that she experienced depression and anxiety and anticipated a need for an additional spinal surgery. (*Id.*). During this period, Ms. Goddard took steps to determine her eligibility for leave under the Family and Medical Leave Act ("FMLA" or "Act").

Ms. Goddard sent an email to Michelle DeFouw, Chief of Staff at Dimension, on February 8, 2018 to inquire about taking FMLA leave, as her manager directed her to do. (Blackburn Aff. at ¶ 12; Goddard Dep. at 107−08). When Ms. Goddard did not receive a response, she sent another email to Ms. DeFouw one week later, on February 15, 2018, stating that she had "an immediate need for FMLA." (DeFouw Dep., Ex. A-2). Ms. DeFouw responded that day and instructed her to contact Sally Mason, Ms. DeFouw's administrative clerk. (DeFouw Dep. at 16). Ms. Goddard then contacted Ms. Mason, who responded via email, attached an FMLA notice and directed Ms. Goddard to fill out the Certification of Health Care Provider section. (DeFouw Dep. Ex. B). The Notice included a check mark next to the line: "[You] are eligible for FMLA leave." (*Id.*) Under the "Rights and Responsibilities" section, the Notice also stated that Ms. Goddard must return the completed form by March 2, 2018 "in order for us to determine whether your absence qualifies as FMLA leave." (*Id.*).

Separate from this inquiry, Ms. Goddard had scheduled a one-day absence from work on February 19, 2018 for a tooth extraction. (Goddard Dep. at 102, 132). The next day, Ms. Goddard sent an email and text message to Nicole Blackburn-Tiell, Dimension's Vice President of Administration, on February 20th, explaining that she would be absent due to complications from the extraction. (*Id.* at 131−33). Though the record is unclear about the extent to which Ms. Goddard communicated with Dimension for the remainder of that week, she did not return to work and did not have pre-approval for her continued absence. (Goddard Dep. at 132, 201; Blackburn Aff. at ¶ 15). Dimension contends that Ms. Goddard's notification did not comply with its Attendance Policy, which states:

> Unless there are extenuating circumstances, as determined by the Company, an employee must call and personally speak to the appropriate supervisor or manager about the reason for the employee's absence no later than third minutes prior to the employee's scheduled start time. . . . Notification to the Company of an employee's unscheduled absence via text messages or emails is not sufficient and will be considered absences without leave, which may warrant discipline including termination.

(ECF No. 32 at 8; Goddard Dep. Ex. 3).

One week later, on February 26, 2018, Ms. Goddard was having what she described as a "nervous breakdown," and she went to Columbus Springs Hospital for medical help. (Goddard Dep. at 201). She began treatment in the Partial Hospitalization Program that same day, but did not initially notify anyone at Dimension that she would continue to be absent. (*Id.* at 145). Ms. Blackburn texted Ms. Goddard around noon that day, and Ms. Goddard responded several hours later, stating that she had been hospitalized. (Blackburn Aff. at ¶¶ 18−20;  DeFouw Dep. Ex. D).

Dimension did not receive Ms. Goddard's Certificate of Healthcare Provider by the March 2, 2018 deadline. (Goddard Dep. at 130−31). On March 9, 2018, Ms. DeFouw notified Ms. Goddard that Dimension concluded she had "voluntarily terminated" her position with the company because Dimension had not received her FMLA Certification and because she had not

3

communicated with the Company about her absence since February 28th. (DeFouw Dep. 68−69; Goddard Dep. Ex. F). Ms. Goddard immediately contacted both Ms. DeFouw and Ms. Blackburn to tell them she had not voluntarily terminated her position. (DeFouw Dep. Exs. G, H). She explained that she had given the paperwork to Columbus Springs Hospital staff and thought that it had been returned to Dimension. She also contacted the staff member at Columbus Springs Hospital responsible for completing FMLA medical certifications and again requested that her documents be sent to Dimension. (Goddard Dep. at 142). Dimension received Ms. Goddard's form at approximately 11:00 a.m. on March 9th. (DeFouw Dep. Ex. G). In the same communication, Columbus Springs Hospital notified Dimension that Ms. Goddard would remain under medical care until April 13, 2018.

Ms. DeFouw confirmed receipt of the fax later that afternoon via letter by email. (DeFouw Dep. Ex. J). In her letter, she also indicated for the first time that Dimension was no longer covered by the FMLA:

> Please note, this work site no longer has 50 employees within a 75-mile radius. Accordingly, this leave will not be designated under the Family Medical Leave Act. I've revised the attached notice to reflect the reason for lack of eligibility . . . The company is granting you three weeks of unpaid personal leave beginning on February 21, 2018. This leave will expire on March 15, 2018.

(*Id.*). When Ms. Goddard did not report to work on March 15, 2018, Dimension terminated her. Ms. Goddard learned of her termination when she was told that her medical insurance had been cancelled due to termination while she attempted to fill her prescriptions. (Goddard Decl. at ¶ 30).

She applied for unemployment benefits with the Ohio Department of Job and Family Services ("ODJFS") (DeFouw Dep. Ex. K). ODJFS held several hearings, including appeals, about Ms. Goddard's eligibility throughout the spring and summer of 2018. ODJFS ultimately

determined that Dimension terminated Ms. Goddard without just cause. (Goddard Decl. at ¶ 33, Ex. 2).

Ms. Goddard later filed her Complaint in the Southern District of Ohio on April 19, 2019, and the parties engaged in discovery for over a year. Defendants moved for Summary Judgment on June 30, 2020. (ECF No. 32). On July 21, 2020, Ms. Goddard filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Opposition") (ECF No. 33) and attached several exhibits, including the Declaration of Alexandria Goddard (Ex. 2); transcripts from phone hearings of the Unemployment Compensation Review Commission ("Unemployment Commission") (Exs. 3, 5); and a Declaration of Helen M. Robinson, Ms. Goddard's attorney (Ex. 7). Defendants then moved to strike certain statements, exhibits, and arguments in Ms. Goddard's Opposition. (ECF No. 36).

Defendants also filed a Reply in Support of their Motion for Summary Judgment. (ECF No. 37). Ms. Goddard subsequently requested the Court's permission to file a Sur-Reply so that she could address arguments and evidence that she says Defendants raised in the Reply for the first time. She attached two new exhibits to her proposed Sur-Reply. (ECF No. 38). Defendants opposed her Motion to File Sur-Reply and moved to strike the two additional exhibits, and the parties each filed one additional argument about the admissibility of these exhibits. (ECF Nos. 39, 40, 41). The Court first reviews Ms. Goddard's Motion to File a Sur-Reply before turning to Defendants' Motions to Strike and Motion for Summary Judgment.

### III. MOTION TO FILE A SUR-REPLY

The rules of this Court provide for the filing of motions, memoranda in opposition, and replies and generally do not permit "additional memoranda beyond those enumerated . . . except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). Courts in the Southern

District of Ohio, however, may permit a party to file a sur-reply without showing good cause if doing so does not result in prejudice toward the opposing party. *Nat'l City Bank v. Aronson*, 474 F. Supp 2d 925, 930 (S.D. Ohio 2007) (citing *Burt v. Life Ins. Co. of N. Am.*, No. C-1-05-673, 2006 LEXIS 54630, at *9 (S.D. Ohio Aug. 7, 2006)). The Sixth Circuit also maintains a "strong preference that claims be adjudicated on their merits." *Coleman v. Shoney's Inc.*, 79 Fed. App'x 155, 157 (6th Cir. 2003).

Ms. Goddard requests the Court to permit her to file a sur-reply in response to Defendants' Reply in Support of their Motion for Summary Judgment ("Reply Brief") so that she may respond to arguments and evidence Defendants pose in the Reply Brief that Ms. Goddard says were not included in the Motion for Summary Judgment. Specifically, Ms. Goddard cites Defendants' use of a different timeframe as the relevant period for determining whether they had the requisite number of employees for coverage under the FMLA. In the Motion for Summary Judgment, Defendants use "March 2017 through Ms. Goddard's termination date of March 15, 2018" as the relevant period. (ECF No. 32 at 8 n.2). In the Reply Brief, Defendants describe the relevant period as "all of 2017, and the first quarter of 2018." (ECF No. 37 at 3).

Ms. Goddard also points to two new exhibits Defendants include in the Reply Brief: the Supplemental Affidavit of Dimension HR Director, Michelle DeFouw (ECF No. 37-1, Ex. F), and a 2017 Paycor Payroll Register (*Id.*, Ex. F-1). Through these two exhibits, Dimension offers new data on its number of employees in early 2017. Previously, Dimension said that its "available 2017 payroll records only dated back to the beginning of the third quarter of 2017 because, prior to that, Dimension used a different payroll provider, called Paycor, and records relating to that provider were no longer available." (ECF No. 37 at 4). In the Reply Brief,

Dimension asserts that it located the previously unavailable Paycor records and offers the missing data.

The dispute in this case requires that Dimension was an FMLA-covered employer when Ms. Goddard applied for FMLA leave. The Act defines an FMLA-covered employer as one "who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or proceeding calendar year." 26 C.F.R. § 825.104. Whether, when, and how Dimension determined that it is no longer covered by the FMLA is therefore central to this case, as is any data that purports to capture the number of Dimension's Ohio-based employees during the relevant period. Accordingly, Dimension's citation of new payroll data and use of a different relevant time period in the Reply Brief constitutes good cause for Ms. Goddard's sur-reply. The Court therefore **GRANTS** Ms. Goddard's Motion to File a Sur-Reply in Response to Defendant's Reply Brief.

## IV. MOTIONS TO STRIKE

### A. Standard of Review

The Court may, upon motion or on its own, strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(F). Motions to strike are entrusted to the "sound discretion of the trial court, but are generally disfavored." *Yates-Mattingly v. University of Cincinnati*, No. 1:11-cv-753, 2013 WL 526427, at *1 (S.D. Ohio Feb. 11, 2013). Indeed, "[s]triking pleadings is considered a drastic remedy to be used sparingly and only when the purposes of justice so require." *Id.* The Court should not grant a motion to strike if "the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." *Joe Hand Promotions, Inc. v. Havens*, 2:13-cv-0093, 2013 WL 3876176, at *1 (S.D. Ohio July 26, 2013) (internal quotation omitted). Though

7

motions to strike are disfavored when "they serve only to delay," courts may grant motions to dismiss when they expedite cases by removing "unnecessary clutter." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

Under Rule 56(c), a party may support its position in a summary judgment briefing by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials. . . ." Fed. R. Civ. P. 56(c)(1).

## B. Law and Analysis

### 1. Motion to Strike Statements and Filings in the Opposition

Ms. Goddard filed an Opposition to Defendants' Motion for Summary Judgment and attached seven exhibits, including her own declaration, transcripts of phone hearings by the Unemployment Commission, and a declaration by her attorney, Helen Robinson. Ms. Goddard's declaration includes details about her health condition, her hospitalization, and her termination from Dimension. The transcripts capture two hearings that the Unemployment Commission held to determine whether Ms. Goddard was fired with cause and her eligibility for benefits. Ms. Robinson's declaration explains how she obtained the audio recordings of the hearings and the process she used to have them transcribed professionally.

Defendants move to strike most of Ms. Goddard's declaration and the phone hearing transcripts, as well as arguments in Ms. Goddard's Opposition brief that are not supported in the record.

#### a. Ms. Goddard's Declaration

Defendants ask the Court to strike statements in Ms. Goddard's Declaration for a variety of reasons, including inadmissible hearsay, impermissible medical opinions from a biased lay

8

person, statements that are contradicted by the record, and statements that are not based on personal knowledge. The Court groups Ms. Goddard's statements into three categories and analyzes Defendants' arguments against them below.

*i. Health Statements*

Defendants argue that Ms. Goddard's Declaration statements about her medical conditions and diagnoses should be stricken because she is not a medical professional and therefore is unqualified to make them. Defendants assert that a plaintiff's lay opinions cannot replace "competent medical evidence" in summary judgment briefing. *See Reinwald v. Huntington Nat'l Bank*, 684 F. Supp. 2d 975, 982 (S.D. Ohio 2010).

In *Reinwald*, the plaintiff's affidavit asserted several medical opinions: she defined her medical condition, endometriosis; described the symptoms of endometriosis; opined that her case was a particularly severe one; and explained the nature and side effects of a particular medicine she had been prescribed. *Id.* She also alleged she was "unable to work" on specific dates due to "severe debilitating pain from the Lupron injections." *Id.* The employer argued that the plaintiff had not established that she had a "serious health condition" under the FMLA because she had not produced medical evidence that her symptoms rendered her unable to work. *Id.* The court found that the plaintiff's affidavit could not alone establish these medical opinions, and that her statements were insufficient to support a conclusion that the side effects she experienced from her endometriosis treatments necessitated her absence from work. *Id.* Notably, the court did not strike the plaintiff's medical statements from the record. *See id.*

Defendants argue that Ms. Goddard's health statements are similar to the *Reinwald* plaintiff's medical opinions for four primary reasons: (1) she makes purported diagnoses; (2) she attests to the effect of her medications; (3) she describes her inability to work; and (4) she alleges

causation. Moreover, Defendants seek to strike many of these statements on hearsay grounds as well. Defendants also take issue with Ms. Goddard's Opposition Brief statements about her health because she does not support them with expert testimony by a medical professional. This Court does not find these arguments persuasive. The Court notes meaningful distinctions between Ms. Goddard's Declaration statements and the *Reinwald* statements, and it finds that exceptions to the general ban on hearsay apply. Rather than provide medical opinions, Ms. Goddard's statements offer her own impressions of her bodily health and recount the medical care she received.

First, unlike the *Reinwald* plaintiff, who asserted the specific medical diagnosis of endometriosis, Ms. Goddard presents general descriptions of her physical state. For example, she writes that she suffered from "excruciating back pain," "back problems and pain," "depression," "anxiety," (Goddard Decl. ¶¶ 3, 6, 9). She also attests that, in late February 2018, she "was becoming increasingly unwell" and that "t[t]he best way I can describe it was I felt like I was having a nervous breakdown and was in bad shape." (*Id.* ¶ 12). These statements do not purport to replace a medical diagnosis. Instead, they describe her then-existing emotional, sensory, and physical conditions, including her pain and bodily health. They are the type of statements contemplated by Federal Rule of Evidence 803(3) and therefore are admissible as an exception to hearsay. Accordingly, the Court does not strike these statements.

Second, Ms. Goddard describes her own impressions of her treatment instead of attesting to effects that require a medical diagnosis. She says she "did not like the effects of the drugs that were described for me, as they made me sick." (*Id.* ¶ 6). She also describes that she felt "horrible withdrawal symptoms" after she tried to stop "taking the prescribed opioid based medication on my own" and that, at one point, she felt she "was not getting better." (*Id.* ¶¶ 26−27). Unlike the

*Reinwald* plaintiff, who assessed her symptoms relative to medical norms, here Ms. Goddard focused on her impressions of her then-existing bodily health. Thus, Rule 803(3) also allows these statements to be admitted.

Third, Ms. Goddard's statements about her inability to work will not be stricken. She attests that she was "admitted to the hospital as an inpatient" because she "was advised that withdrawing from opioids on [her] own was not only unsafe, but could be life threatening." (*Id.* ¶ 27). She also describes receiving "suboxone in a medically supervised inpatient detoxification program, where [she] was closely monitored." (*Id.* ¶ 28). She reports feeling that she was "in no shape to return to work on March 15th" because her "doctor had not released [her] to return until April 13, 2018." (*Id.* ¶ 25). Similarly, she explains that she did not feel it was "feasible" for her to leave the hospital because doing so would have been "against medical advice." (*Id.* ¶ 29). Ms. Goddard offers these statements not to prove the truth of the matter asserted, but to declare how she felt and explain her decision-making based on her personal knowledge of her own physical well-being. (ECF No. 40 at 3). The jury will be charged with determining the credibility and weight of these statements, but the Court does not strike them now.

Fourth, Defendants mischaracterize two of Ms. Goddard's statements as improperly establishing claims of medical causation. Ms. Goddard attests that she experienced "excruciating back pain as a result of back surgery and complications from an attempted spinal fusion procedure." (*Id.* ¶ 3). She offers this statement, not to prove the causal source of her back pain, but to describe the condition that initially caused her to seek FMLA leave. Ms. Goddard also explains: "I then focused on getting better, which was somewhat derailed when I unexpectedly found out on March 9, 2018 that the Company supposedly did not have FMLA and I would be fired if I didn't come back to work on March 15, 2018 . . . ." (*Id.* ¶ 24). Ms. Goddard's description

of her mental commitment to her own physical improvement does not constitute a causal medical opinion, nor does it violate the ban on hearsay.

Finally, Defendants contest the remaining health statements in Ms. Goddard's Declaration on the basis of hearsay alone. Several of these statements are admissible as Statements Made for Medical Diagnosis under Federal Rule of Evidence 803(4). For example, Ms. Goddard describes, "I assured the medical staff that I was not a danger to myself or others, and begged them for another alternative to receiving treatment," and that she "agreed to be treated in a partial hospitalization program." (*Id.* ¶¶ 17−18). Because she made these statements to aid medical professionals in diagnosing her and prescribing her course of treatment, they qualify as an exception to hearsay and therefore are admissible. The remaining Declaration statements about Ms. Goddard's course of treatment evidence her own plans to attend outpatient treatment through the hospital and therefore qualify as then-existing mental conditions under Rule 803(3).

Given the dissimilarities between *Reinwald* and the case sub judice, as well as the applicable hearsay exceptions, the Court does not strike Ms. Goddard's health statements from consideration. Likewise, the Court does not strike Ms. Goddard's health statements from the Opposition Brief.

### ii. Statements about Allegiance and Dimension

Defendants argue that Ms. Goddard's Declaration statement about the relationship between Dimension and Allegiance is not based on personal knowledge or any other admissible evidence, and they move to strike the paragraph that pertains to that relationship. For the sake of completeness, the Court reproduces the paragraph Defendants cite below:

12

It is my belief that Dimension Service Corporation is part of and/or affiliated with Allegiance Administrators, LLC based on the Allegiance Administrators' website; the Linked-in website which identifies approximately 14 employees who worked at Dimension during my employment as Allegiance Administrators, LLC employees; at-will employment documents I signed when I began my employment with Dimension that list a group of companies, including Allegiance Administrators, LLC; and emails that I send and received from Dimension employees showing Allegiance Administrators, LLC at the bottom.

(*Id.* ¶ 2). Ms. Goddard certainly has personal knowledge of employment documents that she herself signed and of email signature blocks that she saw while employed at Dimension. Moreover, in her Opposition Brief, Ms. Goddard further cites website addresses that offer corroborating evidence of the claims she makes in this paragraph. The Court therefore does not strike this paragraph from consideration.

### b. Unemployment Commission Phone Hearing Transcripts

Ms. Goddard also attached two phone hearing transcripts that occurred before the Unemployment Commission to her Opposition Brief: one on July 9, 2018, and one on July 24, 2018. (ECF No. 33, Exs. 3-A, 5-A). Per Ms. Robinson's declaration, the Unemployment Commission created an audio recording of each hearing and sent both to Ms. Robinson in September 2018 when she requested them. (ECF No. 33, Ex. 5). Ms. Robinson attests that she sent the tapes to a paralegal at her law firm, who sent them to the Court Reporting Company of Fraley Cooper to be transcribed.

Defendants argue that the Unemployment Commission phone hearing transcripts should be stricken because they are inadmissible under Ohio law. Alternatively, Defendants argue that the transcripts have not been properly authenticated and are irrelevant to the summary judgment proceedings.

Ohio law, in relevant part, provides:

[T]he information . . . furnished to the director by employers or employees pursuant to this chapter is for the exclusive use and information of the department of job and family

13

> services in the discharge of its duties and shall not be open to the public or be used in any court action or proceeding pending therein, or be admissible in evidence in any action, other than that arising under this chapter or section 5733.42 of the Revised Code.

O.R.C. § 4141.21. This state law privilege, however, "is not controlling in federal question cases" that are adjudicated in federal court. *Weckbacher v. Mem'l Health Sys. Marietta Mem'l Hosp.*, No. 2:16-CV-01187, 2019 WL 5725048, at *4−*5 (S.D. Ohio Nov. 5, 2019) (quoting *Freed v. Grand Court Lifestyles, Inc.*, 100 F. Supp. 2d 610, 612 (S.D. Ohio 1998). This is because Federal Rule of Evidence 501 "states that privilege shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." *Id.* (quoting *Hancock v. Dodson*, 958 F.2d 1367, 1372−73 (6th Cir. 1992)) (internal quotations omitted). The claims before the Court in this case are predicated on federal question jurisdiction under FMLA. As such, O.R.C. § 4141.21, alone, does not bar Ms. Goddard from presenting evidence of her unemployment compensation proceedings. *See Williams v. United Steelworkers of America*, 2011 WL 2135179, at *8 (S.D. Ohio May 27, 2011) ("Despite [§ 4141.21], ODJFS records are not entitled to an absolute privilege in federal courts.").

Defendants next argue that the phone hearing transcripts should be stricken because they are not properly authenticated: the court reporter who transcribed the audio tapes was not present at the Unemployment Commission phone hearings and did not provide an affidavit to authenticate the transcription or explain the chain of custody. Defendants cite the general rule in the Sixth Circuit to exclude unauthenticated exhibits from consideration on a Motion for Summary Judgment. *See Moore v. Holbrook*, 26 F.3d 697, 699 (6th Cir. 1993) ("[S]worn or certified copies of all documents referred to in an affidavit must also be attached to the affidavit.").

14

Some courts in the Sixth Circuit, however, will consider an unauthenticated document when deciding a motion for summary judgment if the objecting party argues only that the document's proponent failed to authenticate it properly but does not challenge its authenticity. *Moore v. Baptist Mem'l Coll. of Health Scis.*, No. 08-2311 MA/P, 2010 WL 100551, at *6 (W.D. Tenn. Jan. 7, 2010); *see also Starks-Umoja v. Fed. Express Corp.*, 341 F. Supp. 2d 979, 984 (W.D. Tenn. 2003) (considering exhibits on summary judgment "despite the lack of authentication" because "Defendant has not argued that the exhibits are inaccurate representations of the documents in issue, but has merely argued that Plaintiff filed to properly authenticate them."). In adopting this approach, courts ensure they "fairly consider[] all of the evidence that Plaintiff contends supports her claims." *Id.*

This Court opts to follow this approach in this case. Here, Defendants do not contest the authenticity of the transcripts of the Unemployment Commission hearings. Indeed, the professional reporter that transcribed the hearing audio tapes provided the following certification on the final page of both transcriptions: "I do hereby certify that the foregoing is a true, correct and complete written transcript of the audiotaped proceedings in this matter, reduced by me into stenotypy, to the best of my ability, and transcribed from my stenographic notes on the 6th day of July, 2020." (ECF No. 33, Exs. 3-A, 4-A). Both certifications are signed and notarized. Ms. Goddard's attorney, Helen Robinson, also affirmed in her Declaration that the hearing audio recordings are "available to the parties upon request" and that she forwarded the recordings to Defendants twice. (ECF No. 33, Ex. 5). Defendants nevertheless take issue with the fact that Ms. Goddard has not yet authenticated that the hearing was "completely and accurately transcribed." (ECF No. 41 at 6). Because Defendants do not argue that the transcriptions are inaccurate, the Court does not strike the transcripts because they are not yet properly authenticated.

Finally, Defendants contend that the Unemployment Commission hearing transcripts are irrelevant to the case before this Court. Specifically, they argue that "there is no merit in any suggestion that there is relevance to Michelle DeFouw being inexact on time lines [sic] of the Dimension employee count" during the phone hearings. (ECF No. 36 at 15). The Court does not agree. The Unemployment Commission hearing transcripts include testimony by Dimension's Chief of Staff, Michelle Defouw, as to the number of employees that Dimension had during the relevant time period for determining FMLA coverage. The number of Defendants' employees is a central issue in this case, let alone a relevant one.

The Court does not strike the Unemployment Commission hearing transcripts on a basis of irrelevance. For the same reasons, the Court does not strike statements in Ms. Goddard's Declaration related to the Unemployment Commission hearing transcripts.

*c. Statements in the Opposition Brief*

Defendants also ask the Court to strike statements in the Opposition Brief because, in their view, they either misstate the record or, contradict the record, or lack support in the record. The Court has reviewed these concerns but finds that they do not merit striking the statements. Rule 56(c)(3) allows the Court to consider materials in the record that Ms. Goddard does not directly cite in the Opposition Brief, and the Court is satisfied that her arguments have sufficient support from the record.

Accordingly, the Court **DENIES** Defendants' Motion to Strike the Ms. Goddard's Declaration, the Unemployment Commission hearing transcripts, and the related statements in the Opposition Brief.

## 2. Motion to Strike Exhibits in the Sur-Reply

To her Motion to File Sur-Reply, Ms. Goddard attached two additional exhibits: (1) an attachment to a November 14, 2018 negotiation that Dimension's General Counsel, Brian Biglin, emailed to Ms. Goddard's counsel ("Dimension Attachment"); and (2) a reply email and corresponding attachment to the Dimension Attachment from Ms. Goddard's attorney, which was also sent on November 14, 2018 (together, the "Sur-Reply Exhibits"). As with the Unemployment Commission hearing transcripts, Defendants do not raise concerns about the authenticity of the Sur-Reply Exhibits. Defendants move to strike both documents because they have not been properly authenticated. Defendants also move to strike the Dimension Attachment as inadmissible because it was originally presented during settlement negotiations. Finally, Defendants argue the documents are not relevant.

As previously discussed, the Court does not decline to consider Ms. Goddard's exhibits solely because they have not yet been properly authenticated because Defendants do not contest their authenticity. This rationale applies even more strongly to the Dimension Attachment, since Dimension's own lawyer originally provided the document. *See Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821705, at *5−*6 (M.D. Tenn. Sept. 26, 2006) (considering an exhibit that was not properly authenticated because the defendant did not contest the exhibit's authenticity "and the fact that the defendant itself produced the very document it now challenges. . . ."). Defendants do not dispute that Dimension's lawyer provided the email attachment to Ms. Goddard, and they do not question the contents of the attachment. In order to consider fairly all of the evidence that Ms. Goddard contends supports her claims, the Court does not strike the Sur-Reply Attachments due to lack of authentication.

Next, Defendants argue that Federal Rule of Evidence 408 renders the Dimension Attachment inadmissible because it was presented during the course of settlement negotiations. Under Rule 48, evidence is "not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[.]" Fed. R. Evid. 408. Courts, however, "may admit this evidence for another purpose[.]" *Id.* For example, a document that is otherwise discoverable is not rendered inadmissible simply because it was presented during settlement negotiations. *See* Fed. R. Evid. 408, Advisory Committee Notes (citing *Ramada Development Co. v. Rauch*, 644 F.2d 1097, 1107 (5th Cir. 1981)) ("[T]he Rule cannot be read to protect pre-existing information simply because it was presented to the adversary in compromise negotiations."). Here, the Dimension Attachment appears to pre-exist the settlement negotiations and therefore is not inadmissible under Rule 408.

Finally, Defendants argue that the Sur-Reply Exhibits do "nothing to rebut the detailed line-by-line overview of payroll records that Ms. Defouw provided" and that the documents are therefore irrelevant. (ECF No. 39 at 2). The Dimension Attachment, however, appears to show state agency employee count records that differ from Ms. Defouw's statements elsewhere in the record. The document is labeled "OHIO DEPARTMENT OF JOB AND FAMILY SERVICES" and contains a form bar code. (ECF No. 39, Ex. B). Below, the document contains three columns under "Dimension Service Corporation"—January, 51; February, 50; and March, 49. (*Id.*) Because employee count is central to this case, and the Sur-Reply Exhibits tend to make a specific count of Dimension's employees more probable than it would be without the Sur-Reply Exhibits, the documents are not irrelevant.

The Court finds no basis for striking Sur-Reply Exhibits. Accordingly, Defendants Motions to Strike is **DENIED**.

## V. MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in the non-moving party's favor. *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (internal quotations omitted) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### B. Law and Analysis

In her Complaint, Ms. Goddard asserts three causes of action: (1) interference with FMLA rights; (2) retaliation for the exercise of FMLA rights; and (3) equitable estoppel due to detrimental reliance. Defendants move for summary judgment on each of these counts.

<u>1. FMLA Interference Claim</u>

To prevail on an FMLA interference claim, a plaintiff must establish that: (1) the defendant is an FMLA-covered employer; (2) she was an eligible employee; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of intent to take leave; and (5) the employer denied her FMLA benefits to which she was entitled. *Wallace v. FedEx Corp.*, 764 F.3d 571, 585 (6th Cir. 2014) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). No violation FMLA violation exists if the employer can show it had "a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Id.*

Defendants argue that Dimension is not an FMLA-covered employer under the statute; that Ms. Goddard has not sufficiently proven she has a "serious health condition" and therefore has not proven she was entitled to FMLA leave; and that Ms. Goddard did not satisfy the FMLA notice requirements. The remaining elements are uncontested.

### *a. Whether Dimension Is an FMLA-Covered Employer*

The FMLA defines a covered employer as "any person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees [within 75 miles of the worksite] for each working day during each of 20 or more calendar workweeks in the current of preceding calendar year." 26 C.F.R. § 825.104; *see also* 29 U.S.C. § 2611(2)(b)(ii). The Act further requires that "[a]ny employee whose name appears on the employer's payroll will be considered employed each working day of the calendar week, and must be counted whether or not any compensation is received for the week." 29 C.F.R. § 825.05(a). Acordingly, employees on paid or unpaid leave must be included in the employer's count "as long as the employer has a reasonable expectation that the employee will later return to active employment." 29 C.F.R. § 825.05(b)

20

Defendants argue there is no genuine dispute of material fact about Dimension's number of employees. Defendants cite an Affidavit by its Chief of Staff, Ms. DeFouw, and attached payroll records that indicate Dimension employed fewer than 50 employees within 75 miles of its Dublin, Ohio facility for the entirety of 2017. (ECF No. 32, Ex. A). Dimension asserts that these "objective facts are proven by Dimension's payroll records and attested to" by at least two Dimension executives. (ECF No. 32 at 8).

Ms. Goddard argues that these statements do not end the inquiry for two main reasons. First, she notes that the Paycor Records Dimensions provides "show a single number of employees next to each month" but "do not provide the number of employees by week." (ECF No. 33 at 20). Because the reports show a fluctuating number of employees between months but do not indicate the number of employees on any particular week, Ms. Goddard argues that the reports are insufficient for determining the number of Dimension's employees per week as the Act requires. whether Dimension is a covered employer under the FMLA.

Second, Ms. Goddard shows Dimension offered inconsistent accounts of when it lost its FMLA coverage over the course of litigation. For example, the Unemployment Commission hearing transcripts reveal that Dimension's HR Director, Ms. DeFouw, originally reported a different timeframe by which Dimension they lost FMLA coverage: "[W]e lost our standing in 2017 . . . I would say it was probably fall." (ECF No. 33 at 13−14). Later, Ms. DeFouw reported Dimension had "less than 49 employees at all times during the Relevant Period," or for the entirety of 2017. (DeFouw Aff. at ¶ 27, Ex. A). Additionally, Ms. Goddard cites a letter to appears to be issued by the Department of Job and Family Services, which Dimension's lawyer sent to Ms. Goddard's counsel via email. (ECF No. 38 Ex. B). That letter displays three columns under "Dimension Services Corp."—"January, 51; February, 50; March, 49." (*Id.*).

These competing records create a genuine dispute of material fact about Dimension's number of employees, by week, in 2017. Accordingly, the Court does not award summary judgment to Defendants on the issue of their number of employees or their status as an FMLA-covered employer.

*b. Whether Dimension Is an Integrated Employer with Allegiance and/or National*

Alternatively, Ms. Goddard alleges that even if Dimension could prove that it had no more than 49 employees within 75 miles of its Dublin, Ohio facility, the Company consisutes an integrated employer with Allegiance Administrators, LLC and/or National Administrative Service Co. for purposes of FMLA coverage.

The integrated employer test is a tool that helps ensure the "appropriate employees are aggregated for the numerosity test of the FMLA." *Grace v. USCAR*, 521 F.3d 655, 664 (6th Cir. 2008). The regulations provide four factors for determining whether two entities should be treated as an integrated employer: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership and financial control. 29 C.F.R. § 825.104(c)(2). When these elements are met, "[s]eparate entities will be deemed to be parts of a single employer for purposes of the FMLA" and the "employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility." *Id.*

Ms. Goddard points to evidence which suggests that Dimension is an integrated employer with Allegiance, Allegiance has its own employees, and those employees should aggregate with Dimension's employee figures. For example, the Allegiance website displays at least four Executive Team employee biographies that describe individual positions as falling under both

22

"Dimension Services Corporation" and the "Allegiance Administrators' team."[1] Allegiance Administrators, LLC, Executive Team, http://allegianceadministrators.com/ourteam.aspx (last visited Dec. 7, 2020). The website also lists Dimension's address, 5500 Frantz Road in Dublin, Ohio, as the address for Allegiance. *Id.* Additionally, Ms. Goddard cites two email signature templates as demonstrating an integrated relationship between Allegiance and Dimension. Her own was company email signature read, "Agent Dealer Services, Allegiance Administrators" even though she was employed as an Agent Dealer by Dimensions (DeFouw Dep. Ex. A). Similarly, Ms. Mason's email signature reads, "Dimension Service Corp. / a Member of Allegiance Administrators." (DeFouw Dep. Ex. B).

Defendants, on the other hand, contend that there is no issue of fact in dispute because each of Defendants' affiants provided affidavit statements that National and Allegiance had "ZERO employees at 5500 Frantz Road, <u>or anywhere</u>, during the Relevant Period." (emphasis in original) (ECF No. 37 at 7). Ms. DeFouw, for example, stated that "during the Relevant Period Allegiance and National both did not have any employees, either at the 5500 Frantz Road location or elsewhere . . . employees of Dimension performed services for Allegiance and National under a shared services model, but Dimension was the sole employer at 5500 Frantz Road, Dublin, Ohio." (DeFouw Aff. at ¶¶ 23−24). Dimension explains that the entity structure had no employees but instead served "necessary functions required by regulations governing the vehicle service contract industry. . . ."

This Court finds that the competing statements by Ms. Goddard and Defendants raise a genuine dispute of material fact about whether Dimension and National and/or Allegiance

---

[1] Some of the facts and statements that Ms. Goddard cites in her Opposition Brief no longer existed on Allegiance's website at the time of the Court's review.

constitute an integrated employer, and that it should be resolved at by a jury. Similarly, the competing statements raise a genuine dispute about whether Allegiance had employees that should be aggregated for the purposes of determining numerosity under the FMLA. The Court therefore **DENIES** summary judgment for Defendants on the integrated employer issue.

### c. Whether Ms. Goddard Had a Serious Health Condition

The FMLA entitles employees to take "reasonable leave" for certain medical reasons, including a "serious health condition." 29 U.S.C. § 2601(b)(2). Under the statute, a "serious health condition" is an "illness, injury, impairment, or physical or mental condition" that involves either "inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Defendants argue that Ms. Goddard presents "no record evidence" to prove that she suffered from a qualifying serious medical condition at the time of her absence and therefore cannot establish her interference or retaliation claims as a matter of law. Ms. Goddard, however, included Medical Record #017282 from Columbus Springs Dublin as an exhibit to her Deposition. (Goddard Dep. Ex. 11). The report describes Ms. Goddard's "present illness" on February 26, 2018 as including "multiple symptoms of depression and anxiety to include poor sleep, feelings of guilt and worthlessness, decreased energy, poor concentration, poor appetite, excessive worry, restlessness, fatigue, irritability, muscle tension." (*Id.*). Under Management Options, the report lists the following: "Admit to Columbus Springs partial hospitalization program for intensive psychotherapy for at least 5 days a week for at least 4 hours a day." (*Id.*). The Report estimated length of her stay as "2 to 4 weeks." (*Id.*). The Court finds that Ms. Goddard has offered evidence that could allow a reasonable jury to conclude that she was unable

to work in late February and early March 2018 as a result of a serious medical condition. For this reason, Defendants are not entitled to summary judgment on this issue.

### d. Whether Ms. Goddard Gave Adequate Notice

The FMLA requires employees to provide notice to their employers according to the following regulations under ordinary circumstances:

> (a) Timing of notice. An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on an expected birth, placement for adoption or foster care, planned medical treatment for a serious health condition of the employee.
> . . .
> (c) Content of notice. An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave.

29 C.F.R. § 825.302. When an employee faces an emergency health issue or the "approximate timing of the need for leave is not foreseeable," however, the employee is only required to "provide notice to the employer as soon as practicable." *Id.* § 825.303(a). In an emergency, the employee's notice must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request," which includes a "condition [that] renders the employee unable to perform the functions of the job." *Id.* § 825.303(b). The employee "need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." *Id.*

When an employer learns of the need for unforeseeable leave, the employer must decide whether to designate the request for leave as FMLA-qualifying, and its decision to designate FMLA leave "must be based only on information received from the employee. *Id.* § 825.301(a). If the employer needs additional information about the reason for the employee's request, the employer should inquire further of the employee. *Id.* The employer must notify the employee whether leave will be designated as FMLA-qualifying within five business days after the employee's request, absent extenuating circumstances. *Id.* Thus, "[o]nce an employer is given notice that the employee is requesting leave for an FMLA-qualifying reason, the employer bears the obligation to collect any

additional information necessary for the leave to comply with the requirements of the FMLA." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999).

Defendants argue that Ms. Goddard's condition in late February 2018 was not an emergency because her depression and anxiety symptoms began before this time. Accordingly, they argue that the notice rules under C.F.R. § 825.302 apply to her leave, and they conclude that she did not comply with them. In support, Defendants highlight that Ms. Goddard's initial FMLA inquiry pertained to an anticipated spinal surgery instead of the mental health crisis she experienced. They also emphasize that Ms. Goddard did not explicitly notify Dimension of her intent to take FMLA leave and that she did not complete the medical certification by Dimension's March 2nd deadline.

Ms. Goddard submits that she experienced an unplanned mental health crisis. She describes that, in late February, she felt her mental health symptoms intensify, such that "the best way I can describe it was I felt like I was having a nervous breakdown." (Goddard Decl. ¶ 13).  Ms. Goddard attests that she felt "stressed to the point I don't know how to focus."  At least one court has found that a nervous breakdown constitutes such an emergency. *See, e.g.*, *Boadi v. Ctr. for Human Dev., Inc.*, 239 F. Supp. 3d 333, 338−39 (D. Mass. 2017). Likewise, Ms. Goddard argues that she met the alternative notice requirements under C.F.R. § 825.303. She initially notified Dimension about her desire to take FMLA leave for back surgery on February 8, 2018. One week later, after no reply from Dimension, Ms. Goddard emailed the Company again, stating that she had "an immediate need for FMLA" because she was "becoming increasingly unwell." (DeFouw Dep., ECF No. 30, Ex. A).

To resolve these issues, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Barker v. Paccar, Inc.*, No. 2:18-cv-338, 2019 WL 4040533, at *15 (S.D. Ohio Aug. 27, 2019) (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)). Reasonable minds can disagree about whether Ms. Goddard's notice, under the circumstances, provided

Dimension with sufficient notice. A jury should therefore determine the foreseeability of Ms. Goddard's health condition, whether the alternative notice regulations laid out in 29 C.F.R. § 825.303 apply to Ms. Goddard's FMLA notice, and, regardless, whether Ms. Goddard's notice satisfied the FMLA notice and medical certification requirements. Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgement on the FMLA Interference claim.

### 2. FMLA Retaliation Claim

An FMLA retaliation claim based on circumstantial evidence is subject to the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Reinwald*, 684 F. Supp. 2d at 980. To establish a prima facie case based on circumstantial evidence, a plaintiff must prove: (1) she availed herself of a protected right under the FMLA, (2) she suffered an adverse employment action, and (3) there was a causal connection between the valid exercise of her rights under the FMLA and the adverse employment action. *Id.* (citing *Edgar*, 443 F.3d at 508.

After the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for discharging the employee. *Id.* (quoting *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001)). If the defendant offers a legitimate reason for termination, the plaintiff must show the reason was actually pretextual. *Skjanc*, 272 F.3d at 315. An employee may prove pretext by providing "sufficient evidence from which the jury [could] reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994) (finding that pretext can be established by showing the employer's reason was not based in fact, did not actually motivate the termination, or was insufficient to warrant termination). The plaintiff must offer evidence that "demonstrates the employer did not 'honestly believe' in the proffered non-discriminatory

reason for its adverse employment decision." *Reinwald*, 684 F. Supp. 2d at 980 (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)).

Defendants primarily argue that Ms. Goddard's retaliation claim must fail as a matter of law because she cannot establish a prima facie FMLA claim—namely, that Dimension is not an FMLA-covered employer and that Ms. Goddard did not comply with notice requirements. As already discussed in Part B.1 above, this Court rejects the argument that Ms. Goddard cannot meet the prerequisites for an FMLA claim as a matter of law.

Additionally, Defendants assert that Dimension had a nondiscriminatory reason for terminating Ms. Goddard: her three-week absence from work and failure to comply with Company attendance policies. Ms. Goddard explains that she believed she would be granted FMLA leave, per Ms. Mason's email, that her leave was permissible, and that she was therefore only obligated to give periodic update about her leave to Dimension.

Finally, Defendants argue Ms. cannot show a causal connection between her attempts to exercise her FMLA rights and her termination. Conversely, Ms. Goddard asserts that a sufficient causal connection exists. She cites that the peculiar timing of Dimension's announcement that it was no longer an FMLA-covered employer, which occurred within hours of her submitting the FMLA medical certification form to Defendants, after Dimension requested her to do. In the same notice, Dimension also required Ms. Goddard to report back to work at a time Dimension knew Ms. Goddard would still be under medical care.

Like the FMLA interference claim issues, here the parties present genuine factual disputes that depend on the weight and credibility of the various arguments. Because a jury must consider these issues, the Court **DENIES** summary judgment on the FMLA retaliation claim.

### 3. FMLA by Estoppel

Equitable estoppel prevents an employer from raising its non-eligibility as a defense to FMLA denial after making a "definite misrepresentation" about an employee's FMLA eligibility. *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 557 (6th Cir. 2009). For equitable estoppel to apply, a plaintiff must show: (1) a definite misrepresentation as to a material fact by the employer; (2) a reasonable reliance on the misrepresentation by the employee; and (3) a resulting detriment to the employee. *Id.* The plaintiff "need not show that [her] employer either was aware of the true facts or intended for the statement to be relied on." *Id.*

In *Dobrowski*, the Sixth Circuit concluded the employer made a "definite misrepresentation" regarding the employee's FMLA eligibility because the employer gave written notice that "his leave was 'pursuant to the Family and Medical Leave Act and that he was an eligible employee even though he was not, in fact, covered by the Act." *Id.* at 556−57 (internal quotations omitted). In the case sub judice, Dimension emailed an FMLA notice to Ms. Goddard that included a check mark next to the line: "[You] are eligible for FMLA leave" and directed her to complete the relevant forms. (DeFouw Dep. Ex. B). Ms. Goddard also notes that Defendants displayed FMLA postings at the worksite and instructed employees on FMLA leave in the employee handbook, and initially informed Ms. Goddard that the reason for her termination was failure to submit supporting FMLA documentation. On these facts, a reasonable jury could find that Dimension made a definite misrepresentation to Ms. Goddard regarding her FMLA eligibility.

Whether Ms. Goddard relied on Dimension's representation that she had FMLA coverage is also a question for the jury. Ms. Goddard attests that she relied on Defendants' representation that her leave would be protected in making decisions about her absence in late February and

early March 2018. Specially, she states that the accepted medical advice regarding her course of treatment at Columbus Springs Hospital at least partly because she was confident that her employment and health insurance would continue. (Goddard Decl. at ¶ 21, Ex. 2). Defendants, on the other hand, argue that Ms. Goddard could not rely on any representation that she was eligible for FMLA benefits because Dimension did not authorize her hospitalization absences before they occurred. These arguments produce a sufficient disagreement to require submission to a jury. Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment on the issue of equitable estoppel.

## VI. CONCLUSION

For the reasons set for the above, the Court rules as follows: Ms. Goddard's Motion to File Sur-Reply is **GRANTED** [#38]; Defendants' Motion to Strike [#36]; Defendants' Motions to Strike are **DENIED** [#36, #39]; and Defendants' Motion for Summary Judgment is **DENIED** [#32].

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: January 19, 2021**

30